

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

RAVI C. MANICKAVASAGAR

     Plaintiff,

v.                          Civil No. 3:09cv316

VIRGINIA COMMONWEALTH UNIVERSITY
SCHOOL OF MEDICINE, et al.,

     Defendants.

## MEMORANDUM OPINION

This matter is before the Court on Defendants' MOTION TO DISMISS AMENDED COMPLAINT (Docket No. 34). For the reasons set forth below, the Motion will be granted.

## BACKGROUND

In this action, Ravi C. Manickavasagar ("Plaintiff") complains that the decision to reject his application to medical school violated federal disability laws. In his Amended Complaint, the Plaintiff named as Defendants: (1) Virginia Commonwealth University School of Medicine ("VCU"); (2) Christopher M. Woleben, individually and in his official capacity as Chair and member of the Admissions Committee and as Associate Dean for Student Affairs; (3) Wyatt S. Beazley, individually and in his official capacity as a member of the Admissions Committee; (4) Michelle

1

Whitehurst-Cook, individually and in her official capacity as Associate Dean of Admissions; (5) Agnes L. Mack, individually and in her official capacity as Associate Dean of Admissions; and (5) Glenda Palmer, individually and in her official capacity as Assistant Dean of Student Affairs. (See Am. Compl.)

The Amended Complaint seeks "injunctive and monetary relief in connection with the denial of [the Plaintiff's] admission to medical school based either [on] the disability, and/or perceived disability of [the Plaintiff]." (Id. at ¶ 1.) The Amended Complaint asserts four substantive counts against the Defendants: (1) an unconstitutional denial of Equal Protection; (2) a violation of the Rehabilitation Act; (3) a violation of the Americans with Disabilities Act ("ADA"); and (4) Retaliation. However, in the Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss, the Plaintiff has withdrawn the Equal Protection and Retaliation claims asserted in Counts One and Four, respectively. (Pl.'s Response at 29-30.) In addition, the Plaintiff voluntarily has dismissed the action against the individual defendants in their individual capacities. (Id. at 29.) In support of the remaining two counts, the Amended Complaint sets forth the following factual exposition.

2

VCU receives federal funding.   (Am. Compl. at ¶ 10.) The Plaintiff alleges that he, along with 1% of the population, suffers from bipolar disorder.   (Id. at ¶ 12.) According to the Plaintiff, he was diagnosed in late 2005 or early 2006.   (Id. at ¶ 26.)

This action follows in the wake of five separate previous rejections of the Plaintiff's application for admission to the medical school at VCU.   Those rejections occurred in 2001, 2002, 2005, 2008, and most recently in 2009.   (Id. at ¶ 46.)

During the admissions process at VCU, an initial file review is completed on each of the over 6,000 annual applicants.   Under VCU's numeric ranking system, a designation of "1" denotes the most highly qualified applicants, and a designation of "5" marks the least qualified applicants.   (Id. at ¶ 34.)   A designation of "3" is given to average applicants.   (Id.)   The Amended Complaint concedes the highly selective nature of VCU's application process by noting that, "[o]f the approximately 6,000 applications received for admission to the VCU/MCV medical school for the incoming class of 2009," VCU interviews 800 applicants from which 400 are chosen for admission and only 200 matriculate.   (Id. at ¶¶ 167, 292.) According to literature published by VCU: "Applicants are

3

selected on the basis of their potential as prospective physicians as well as students of medicine. Attributes of character, personality factors, academic skills, and exposure to medicine are considered along with academic performance, GPA, MCAT scores, letters of recommendation, and personal interviews at the school of medicine." (<u>Id.</u> at ¶ 176.)

The Plaintiff received his undergraduate degree from Dartmouth University. (<u>Id.</u> at ¶ 190.) The Plaintiff alleges that not only is he qualified for admission to VCU but also that he is more qualified than many applicants selected for an interview and admission. However, at the same time, the Plaintiff concedes that his undergraduate cumulative grade point average of 3.02 is substantially below the VCU median of 3.62. (<u>Id.</u> at ¶ 40, 183, 192, 195.)[1] The Plaintiff also concedes that his MCAT score of 27 is well below the VCU median of 30.5. (<u>Id.</u> at ¶ 179.) Nonetheless, the Plaintiff states that his "academic record was more significant than some students admitted into the program that were not disabled or perceived to be

---

[1] The Plaintiff also obtained a Masters in Science in Biochemistry from Georgetown University, where he obtained a 3.62 grade point average. (Am. Compl. at ¶ 32.) Unlike a bachelor's degree, however, the completion of such graduate coursework is not a prerequisite for admission into the School of Medicine. Moreover, the Plaintiff evidently withdrew from a prior post-baccalaureate program at Drexel University in 2003. (<u>Id.</u> at ¶ 51.)

4

disabled."   (Id. at ¶ 184.)   Furthermore, the Plaintiff
repeatedly asserts that he was told by VCU officials that
his MCAT score and undergraduate grade point average were
"well within" the acceptable range for admission to VCU.
(Id. at ¶¶ 37, 40, 219, 221.)

The allegations in the Amended Complaint make
reference to the two most recent admissions cycles, but the
claims of disability discrimination pertain only to the
decision made in the 2008-2009 admissions cycle.   By way
of background, the Amended Complaint discusses the 2007-
2008 admissions cycle, asserting that the Plaintiff's
application initially was ranked as "average" by Defendant
Woleben (3.0) and "below average" by Defendant Beazley
(3.5).   (Id. at ¶ 43.)   Accordingly, the Plaintiff received
the following notice from VCU: "The Committee's file review
indicates that they wish to consider your file over the
next several weeks before making a decision about [an]
interview.   Since they have some reservations about
granting an interview, your file will be reviewed again by
a small sub-committee before making a final decision."
(Id. at ¶ 196.)

The Plaintiff then wrote to VCU inquiring about the
nature of these unspecified "reservations," and explaining
to the Admissions Committee that an unspecified illness had

disrupted his academic experience.   (Id. at ¶¶ 52, 187.)
The Plaintiff's explanation to the Committee on September
22, 2007, simply cited the existence of an "illness," but
did not claim that he suffered under a "disability." The
explanation did not mention "bipolar disorder."   (See id.
at ¶¶ 52, 187, 199) ("I hope that the school will not deny
me admission based upon a perception of disability due to
my previous illness in 2002 which necessitated my
withdrawal from Drexel University.").   Thereafter, on
January 3, 2008, the Plaintiff's application was rejected.
(Id. at ¶ 201.)

       After being notified of his rejection, the Plaintiff
wrote to VCU on January 17, 2008, requesting that a number
of "accommodations" be made to his application.   (Id. at ¶
204.)   In that letter, the Plaintiff referred to the ADA,
but, even then, he did not assert the existence of a
disability, much less define one.   Specifically, the
Plaintiff requested the following accommodations:

  • 1-17-2008 - ADA Accommodation Request - "Ravi C.
    Manickavasagar asks that he be given the
    reasonable accommodation of *adjusting upwards his
    undergraduate GPA* for his pre-treatment years of
    his Junior and Senior Year at Dartmouth or that
    only his posttreatment Georgetown University GPA
    be considered for purposes of his admission
    application."

  • 1-17-2008 - ADA Accommodation Request - "Ravi C.
    Manickavasagar asks that he be given the

6

> reasonable accommodation of *disregarding the MCAT scores* of 24Q and 21R."

- 1-17-2008 - ADA Accommodation Request - "Ravi C. Manickavasagar asks you to provide the reasonable accommodation of *reconsidering his application* for admission into VCU School of Medicine and that you accept his application for admission into VCU School of Medicine for the fall of 2008."

(Id. at ¶¶ 89-91) (emphases added). The Plaintiff alleges that he was unable to receive a prompt response to his request for accommodations. (Id. at ¶ 53.) VCU apparently responded to that request in a May 14, 2008 letter.[2] (See Pl. Ex. M4-000093-94.)

The Plaintiff appealed the rejection of his 2007-2008 application. (Am. Compl. at ¶ 188.) The appeal was denied, but VCU offered the Plaintiff individual counseling on how to strengthen his application for the 2008-2009 application cycle. (Id. at ¶¶ 71, 188.) Specifically, he was advised to re-write his essays and to apply "early decision" to VCU, because the demonstrated willingness to attend VCU could positively impact his chances of admission. (Id. at ¶¶ 129, 249.)

---

[2] While the May 14, 2008 letter is not included in Plaintiff's exhibits, it is referenced by VCU in its January 22, 2009 letter to Plaintiff. (Pl. Ex. M4-000093-94.) That letter states that "The requests for four different accommodations set forth in your letter of January 15, 2009, follow Ms. Parrish's May 14, 2008, response to your earlier requests for accommodations, and now come in the context of filed, but not served litigation. (Id. at M4-000093.) It goes on to note that "[a]s previously stated in the May 14 letter, VCU is not willing, nor does the law require our admission officials, to lower our admission standards by artificially adjusting your client's grades." (Id. at M4-000094.)

On August 28, 2008, the Plaintiff applied for admission in the 2008-2009 admissions cycle. (Id. at ¶ 263.) It was in this application that the Plaintiff first stated, in his essays, that he suffered from bipolar disorder. (Pl. Ex. M2-000035-38.) Consequently, the Admissions Committee was charged with knowledge of his disability from that time forward, i.e., during the 2008-2009 admissions cycle.

The Plaintiff's file initially was evaluated by Dr. Susan DiGiovanni, who ranked his application as a "4." (Am. Compl. at ¶ 268.) Dr. DiGiovanni subsequently changed the ranking to a "3.5." (Id. at ¶ 269.) A few days later, Defendant Whitehurst-Cook, who had also ranked the Plaintiff's application as a "4.00," changed her review score to a "3.00" (Id. at ¶ 271.) This change effectively ensured that the Plaintiff would, for the first time, be granted access to the interview stage of the admissions process. (See id.) There is no explanation in the record for the change in rankings.

The Plaintiff's interview was conducted by Dr. Glenda Palmer, Assistant Dean for Student Affairs and Director of Financial Aid. (Id. at ¶ 283.) Unfortunately for the Plaintiff, the interview did not go well, and he was given an overall rank of 4.5 on the interview, a score between

8

"Below Average Applicant" and "Unacceptable."   (Pl. Ex. at M2-000015.)   Relevant excerpts from Dr. Palmer's lengthy summary of the Plaintiff's interview are as follows:

- "[H]e is clearly interested in medicine, but his overall academic performance both undergraduate and in a Master's Program is way below our normal standard."

- "Ravi received an MS in Biotechnology from Georgetown in 2006, but the courses there were more oriented to the business rather than the science."

- "The only recent letter of recommendation is from the Dean of the [Georgetown] Program who gave a rather luke warm 'he complied with the requirements.'"

- "When I asked him to tell me about a particular patient that he met while shadowing . . . he was unable to give me a concrete story, and after a lot of thought simply said that they all taught him something."

- "He is a very sincere young man . . . but I would question whether or not he could withstand the academic rigors of medical school."

(Id. at M2-000014.)   Shortly after the interview, the Plaintiff's application for admission in the 2008-2009 admission cycle was rejected by VCU.   (Am. Compl. at ¶ 290.)

From the time that he submitted his 2008-2009 application on August 28, 2009, until his rejection on October 15, 2008, Plaintiff made no requests for

accommodations. (See id. at ¶¶ 89-105.) However, after being rejected and after filing this action, the Plaintiff did request accommodations on several occasions. These requested accommodations included, in pertinent part: (1) the reconsideration of his application; (2) the evaluation of his application in light of the suboptimal care that he had previously received for his disability; (3) a differentiation in the application process between "those applications of applicants who have a mental disability and those who do not;" and (4) that VCU consider his plans to obtain a Ph.D from Georgetown University after his graduation from medical school. (Id. at ¶¶ 96-104; Pl. Ex. M4-000073-74.)

Then, on April 20, 2009, the Plaintiff sent another accommodation request to VCU, wherein he demanded the following:

(a) That Ravi C. Manickavasagar's application would be reviewed with due regard for the effects of Ravi's disability and the impact of the medications he was on, during the application process and the time of his interview;

(b) that Ravi C. Manickavasagar be permitted to discuss with the applications committee members;

(c) that his application will be reconsidered in light of the information requested and provided;

(d) that Cheryl Chesney-Walker, whose services are traditionally reserved for admitted students advocate on his behalf in the admission process,

> seeking removal by VCU School of Medicine's prejudice, antiquated attitudes and the removal of societal and institutional barriers;
>
> (e) that VCU review and reverse the decisions to preclude Ravi Manickavasagar from the benefit of the education at VCU School of Medicine and seeks his admission into the entering class for Fall of 2009; and
>
> (f) that VCU provide a definite "Yes" or "No" answer on all of his accommodations and specific request to be admitted into the Fall class of 2009, by 10 AM, April 27, 2009.

(Am. Compl. at ¶ 105.)  This request was denied by VCU. (Id. at ¶ 139.)  Thereafter, this action was filed.

On August 12, 2009, the Defendants filed a Motion to Dismiss (Docket No. 34) seeking the dismissal of all counts of the Amended Complaint.  In their Motion, the Defendants contend that the Plaintiff remains an "unqualified candidate" for admission to VCU relative to those who have been offered admission.  (Defs' Mot. at 21, 29.) Additionally, the Defendants contend that the Plaintiff fails to allege any facts under Fed. R. Civ. P. 12(b)(6) which show that the Plaintiff's disability formed the basis for his rejection.  (Id. at 29.)

## DISCUSSION

### I.  The Applicable Legal Standard

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) seeks to test the legal sufficiency of the factual

allegations made in the Complaint.  Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  As the Supreme Court held in Bell Atlantic v. Twombly, 550 U.S. 544 (2007), the pleading standard that Rule 8(a) announces does not require "detailed factual allegations," but it demands more than an unadorned accusation.  Id. at 555.  A pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Id.  Nor does a complaint suffice if it tenders only "naked assertion[s]" devoid of "further factual enhancement."  Id. at 557.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Id. at 570.  A claim has facial "plausibility" when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Id. at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Id.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it

12

"stops short of the line between possibility and plausibility of entitlement to relief." Id. at 557. This established pleading standard governs "all civil actions and proceedings in the United States district courts." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009).

Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, without converting the motion into one for summary judgment. Witthohn v. Fed. Ins. Co., 164 Fed. Appx. 395, 396-97 (4th Cir. 2006). However, there are a number of exceptions to this rule. Specifically, a court "may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint, so long as the authenticity of these documents is not disputed," without converting the motion into a motion for summary judgment. Id.; accord Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999) (permitting consideration of extraneous material if such materials are "integral to and explicitly relied on in the complaint").

In this case, the Plaintiff has amplified his Amended Complaint by incorporating and attaching numerous exhibits. The Plaintiff has proffered the text of the numerous "accommodation requests" that he submitted to VCU in the

wake of his two most recent rejections as well as other correspondence between the Plaintiff and VCU. The Plaintiff has also proffered his application and comments made by VCU faculty and staff in evaluating his application. This additional documentation is specifically referred to in the Amended Complaint. Therefore, the Court will consider these documents in deciding the Motion under Fed. R. Civ. P. 12(b)(6).

## II. The Traditional Deference Afforded To Decisions Made By Academic Institutions

Given the specialized nature of the academic environment, it is firmly settled that courts "should only reluctantly intervene in academic decisions." Kaltenberger v. Ohio College of Podiatric Med., 162 F.3d 432, 437 (6th Cir. 1998) (citation omitted). As the Supreme Court has instructed, when reviewing the substance of academic decisions, courts "should show great respect for the faculty's professional judgment." Regents of Univ. of Michigan v. Ewing, 474 U.S. 214, 225 (1985). It is equally clear that: "[u]niversity faculties must have the widest range of discretion in making judgments as to the academic performance of students . . . ." Id. at 225 n.11 (internal citations omitted). This admonition is "especially" true relative to academic decisions which are made in "the

14

health care field, [where] the conferral of a degree places the school's imprimatur upon the student as qualified to pursue his chosen profession," Kaltenberger, 162 F.3d at 437, a profession whose practitioners are entrusted with life and death decisions.

Fundamentally, therefore, it is established that "the determination to admit a student into a given academic program [ordinarily] requires the expert evaluation of numerous factors that are not conducive to judicial decisionmaking." Betts v. Rector & Visitors of the Univ. of Va., 1999 WL 739415, at *5 (4th Cir. Sept. 22, 1999) (emphasis added) (citing Board of Curators of Univ. of Mo. v. Horowitz, 435 U.S. 78, 92 (1978) (noting that "Courts are particularly ill-equipped to evaluate academic performance"). This deference informs the context in which the Amended Complaint in this case must be evaluated, and it further underscores the need for the Amended Complaint to meet the pleading requirements articulated by the Supreme Court in Twombly.

### III. The Plaintiff's Claims Under The Americans With Disabilities Act And The Rehabilitation Act

The Plaintiff has alleged that the Defendants acted in contravention of both the ADA and the Rehabilitation Act by discriminating against him on the basis of his disability,

15

and in failing to reasonably accommodate his disability during the admissions process. (See Pl.'s Opp. At 7.)

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, the Rehabilitation Act states that "[n]o otherwise qualified individual with a disability. . .shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

The ADA and the Rehabilitation Act are generally construed to impose the same requirements. Baird ex rel. Baird v. Rose, 192 F.3d 462, 468 (4th Cir. 1999). This principle follows from the similar language employed in the two statutes and from the clear Congressional directive that the two statutes are to "be coordinated to prevent[] [the] imposition of inconsistent or conflicting standards for the same requirements under the two statutes." Baird, 192 F.3d at 468-69 (internal citation omitted).

To state a cognizable claim under either the ADA or the Rehabilitation Act, a plaintiff must allege that: (1) he has a disability as defined by the statute;[3] (2) he is "otherwise qualified" for the benefit in question; and (3) he was excluded from the benefit on the basis of his disability.[4]   Betts, II v. Rector & Visitors of the Univ. of Va., 145 Fed. Appx. 7, *10 (4th Cir. Aug. 5, 2005). Moreover, to plead a cognizable "failure to accommodate claim" under either statute, a plaintiff must allege that: (1) he is an otherwise qualified individual with a disability, i.e., he is able to perform the essential functions of the position in question with or without reasonable accommodation; and (2) if a reasonable accommodation is necessary, the denial of the accommodation was made in a discriminatory fashion.   Baucom v. Potter, 225 F. Supp. 2d 585, 591 (D. Md. 2002).

---

[3] At least for the purposes of this Motion, neither party contests that "bipolar disorder" constitutes a "disability" under the provisions of the Rehabilitation Act and the ADA.   See Whalley v. Reliance Group Holdings, Inc., 2001 WL 55726, at *4 (S.D.N.Y. Jan. 18, 2001) ("Under the [ADA], Whalley's bipolar disorder constitutes a mental impairment.").

[4] While the general requirements of a disability discrimination claim under the ADA and the Rehabilitation Act are the same, the standard of causation is not.   Rehabilitation Act plaintiffs must demonstrate that the discrimination in question occurred "solely by reason of" their disability.   29 U.S.C. § 794(a).   ADA plaintiffs, on the other hand, need only demonstrate that their disability played a motivating role in the discriminatory action.   See Baird, 192 F.3d at 468-70.

17

By virtue of <u>Twombly</u> and <u>Iqbal</u>, the simple recitation of these elements in conclusory form will not suffice. Thus, the Amended Complaint must be examined to ascertain whether these elements are supported by sufficient factual assertions to make the claims plausible. Here, the Amended Complaint, notwithstanding its volume and length, does not meet the test of <u>Twombly</u> and <u>Iqbal</u>. Indeed, the Amended Complaint establishes that the ADA and Rehabilitation Act claims are not plausible.

### A.   Whether The Plaintiff Was An "Otherwise Qualified Applicant"

To state a claim under either the ADA or the Rehabilitation Act, the Amended Complaint must present a plausible contention of the threshold element that the Plaintiff is "otherwise qualified for the benefit in question." <u>See</u> <u>Baird</u>, 192 F.3d at 467. An individual is "otherwise qualified" for the benefit in question only if he is "able to meet all of a program's requirements in spite of his handicap." <u>Southeastern Community College v. Davis</u>, 442 U.S. 397, 406 (1979); <u>Halperin v. Abacus Tech. Corp.</u>, 128 F.3d 191, 197 (4th Cir. 1997). The Amended Complaint does not present a plausible case that the Plaintiff satisfies this foundational requisite of a cognizable claim.

18

In asserting his qualifications for admission, the Plaintiff repeatedly protests that certain VCU officials told him that his MCAT score and undergraduate grade point average were "well within" the acceptable range for applicants to VCU. (See, e.g., Am. Compl. at ¶¶ 37, 40, 219, 221.) As the Plaintiff himself notes, however, VCU receives an exponentially greater number of applications than it can accept in an entering class. Of the over 6,000 applicants that VCU receives in any given year, only 200 applicants will ultimately begin as first-year medical students at VCU. (Id. at ¶ 292.) Accordingly, as the Amended Complaint concedes, at least by implication, like any competitive graduate-level program, included in this large number of applications are a far-greater number of individuals with "acceptable" scores than can possibly be admitted into any given class.

Given this acknowledged fact, VCU's representation to the Defendant that his scores fell within an "acceptable range" did nothing more than convey to the Plaintiff that he would not be per se excluded from admission on the basis of these objective criteria. And, this representation in no way diminished the effect of the undenied fact that, among the class of quantitatively acceptable applicants, the Plaintiff's undergraduate grade point average and MCAT

score were substantially below the median of VCU's matriculating students.

Moreover, the Plaintiff himself notes that, [o]f the approximately 6,000 applications received for admission to the VCU/MCV medical school, approximately 800 are interviewed, and of those, 400 are chosen for admission." (Id. at ¶ 167.) This averment serves to emphasize the overriding importance of the interview because only half of the applicants who progress to the interview stage are admitted to the incoming class. The Amended Complaint does not contest the self-evident fact that, for reasons that need not be overlooked by VCU under the ADA or the Rehabilitation Act, the Plaintiff's interview, to put it charitably, went quite poorly. See Betts, II, 145 Fed. Appx. at 13. Therefore, notwithstanding the Plaintiff's conclusory allegation that he was more qualified than many admitted applicants, the Amended Complaint, taken as a whole, fails plausibly to allege that the Plaintiff was an "otherwise qualified" candidate for admission. To the contrary, the Amended Complaint shows rather plausibly that the Plaintiff does not satisfy the "otherwise qualified" element of a cognizable claim under either statute. Consequently, his claims under the ADA and the Rehabilitation Act are legally insufficient for failure to

meet the threshold element of a cognizable claim under either statute.

### B. Discrimination In Violation Of The ADA And/Or The Rehabilitation Act

Even if the Plaintiff has successfully satisfied the "otherwise qualified" element (which he has not), the Amended Complaint does not allege facts that plausibly present a case that the Plaintiff's disability was the basis for his rejection, either in part (the ADA) or in whole (the Rehabilitation Act). To support the contention that he was rejected from VCU on the basis of his disability, the Plaintiff relies solely on what he refers to as "shifting explanations" offered by the Defendants for the rejection of his application. (Pl.'s Oppp. at 20.) Specifically, these so-called "shifting" explanations include VCU's representations to the Plaintiff that: "he might be better suited for research and a Ph.D. program rather than medical school; that his volunteer and medically related experience was not substantive; and that portions of his essay for the computerized application remained static for years." (Id.) The Plaintiff claims that these varied explanations evince a "pretext" for discrimination. (Id. at 19.)

It is well here to state the obvious: that, in making these statements, VCU was being kind to the Plaintiff rather than being, as he would have it, disingenuous or discriminatory. To begin, it is fair to say that, given their plain meaning, not one of those statements was in the least discriminatory. Nor is there any fact alleged which would permit a reasonable inference that any one of the statements was pretextual of some invidious purpose. Thus, the statements provide no direct or inferential factual support for the assertion that VCU acted discriminatorily in rejecting the Plaintiff's 2008-2009 application.

The "shifting explanation" contention also must be viewed in perspective of the fact that the Plaintiff's application was reviewed and ranked independently by several different people. It, of course, is hardly surprising that different people would explain their assessments of the application, and their rankings, in different ways. When viewed in this light, the different explanations do not reasonably signify pretext at all. More importantly, it is telling that not one of these individuals found the Plaintiff qualified for admission to VCU's medical school.

When assessing the "shifting explanations" contention, it is important to keep in mind that the Plaintiff's

undergraduate grade point average and his MCAT scores were well below the median of those who were admitted. And, that undeniable fact must be measured in perspective of the Plaintiff's very poor performance in the interview, a key part of the admissions process. Dr. Palmer gave succinct and objectively reasonable explanations for why the interview was ranked as extremely poor (a 4.5 on a scale of 5). These affirmatively pleaded facts render implausible that what the Plaintiff calls "shifting explanations" are proof either of discrimination or are a pretext for it.

Finally, the Plaintiff's "shifting explanations" argument fails to account for the fact that he applied unsuccessfully for admission to VCU on four occasions (2001, 2002, 2005, and 2008) before his application for the 2008-2009 admissions cycle. (Am. Compl. at ¶ 46.) On each of those previous occasions, VCU had no knowledge of the Plaintiff's disability and VCU rejected him on each occasion. That set of events underscores, rather conclusively, that the rejection in the 2008-2009 admissions cycle was a merit-based decision, not one based on a disability, in whole or in part.

Because the Amended Complaint does not plausibly allege facts that the Plaintiff's disability formed the

basis for his rejection from VCU, his claims under the Rehabilitation Act and ADA must be dismissed.

### C. The Failure To Provide Reasonable Accommodations

To support his claims under the ADA and the Rehabilitation Act, the Plaintiff also argues that "VCU provided none of the requested accommodations and did not offer any alternate accommodations which would have enabled [Plaintiff] to enter VCU." (Pl.'s Opp. at 28.)

Both the ADA and the Rehabilitation Act require public institutions such as VCU to make "reasonable" accommodations for persons with qualifying disabilities. Bane v. Virginia Dep't of Corrections, 267 F. Supp. 2d 514, 519 (W.D.Va. 2003) (assessing a claim under the Rehabilitation Act); EEOC v. Fed. Express Corp., 513 F.3d 360, 371 (4th Cir. 2008) (assessing a claim under the ADA). However, these anti-discrimination laws do not require "an educational institution to lower or to effect substantial modifications of standards to accommodate a handicapped person." Southeastern Community College v. Davis, 442 U.S. 397, 413 (1979) (discussing the Rehabilitation Act). Moreover, an educational institution is only required to provide accommodation when a plaintiff has provided a proper diagnosis and "requested specific accommodation." Kaltenberger, 162 F.3d at 437.

24

Additionally, consistent with the mandate that governs the judicial review of academic decisions *generally*, it is established that "[c]ourts must also give deference to professional academic judgments when evaluating the reasonable accommodation requirement." Betts, II, 145 Fed. Appx. at *13 (citing Kaltenberger, 162 F.3d at 436); accord McGregor v. Louisiana State Univ. Bd. of Supervisors, 3 F.3d 850, 859 (5th Cir. 1993); Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 795 (1st Cir. 1992).

The Plaintiff submitted requests for accommodations on January 17, 2008, January 15, 2009, April 1, 2009, and April 20, 2009. (Am. Compl. at ¶¶ 89-105.)  The request for accommodations submitted on January 17, 2008 were submitted after the Plaintiff's application was rejected in the 2007-2008 admissions cycle while his appeal of the rejection within VCU was pending and before it was denied in May 2008.  The other requests for accommodations were submitted after the denial of the 2008-2009 admissions cycle application and after the Plaintiff had filed this action.[5]  Thus, between the Plaintiff's submission of his 2008-2009 admissions cycle application on August 28, 2008,

---

[5] This action was filed in state court on December 23, 2008, but was not served on the Defendants until April 29, May 4, and May 5, 2009.  It was timely removed to this Court on May 15, 2009.

and its rejection on October 15, 2008, the Plaintiff had no pending requests for accommodations. (See id.)

Notwithstanding that the Plaintiff made no request for accommodation during the 2008-2009 admission cycle,[6] VCU afforded an accommodation to the Plaintiff in the 2008-2009 admissions cycle. In particular, the Plaintiff was granted an accommodation when he was effectively afforded an admissions interview by the Associate Dean's unilateral override of his poor initial file review score. (See id. at ¶ 270 ("Michelle Whitehurst-Cook, Associate Dean of Admissions, completed a file review and changed Ravi C. Manickavasagar's ranking from "3.5, 4.0" to "2.5, 3.0," a ranking between "Definitely Interview" and "Interview.")). This was a generous alteration of the normal application process, especially in light of the ranking system used by VCU, the Plaintiff's less than median record, and the large number of applicants who do not receive an interview. (See id.)

The granted accommodation–the interview- presented the Plaintiff an opportunity to overcome his less than median record and his low ranking in the admissions process by performing well during an interview. As the Amended

_____

[6] As previously noted, it was in the 2008-2009 admissions cycle that the Plaintiff first asserted that he had a disability.

Complaint makes clear, the grant of interview is given to a small fraction of applicants, and thus, was a significant accommodation.        Unfortunately   for   the   Plaintiff,   he performed poorly, thereby negating the effectiveness of the accommodation and underscoring the validity of the low rankings he had received earlier in the admissions process. The accommodation showed that the Plaintiff should not be admitted and no further accommodation was warranted.   When viewed with proper deference, it cannot be said that the accommodation   afforded   to   the   Plaintiff   by   VCU   was "unreasonable" as a matter of law.

A further reflection upon the accommodation issue is appropriate in perspective of the timing and nature of the requests  here  at  issue.    First,  the  Plaintiff  cites  no authority for the proposition that post-suit requests for accommodation are reasonable or must be considered, and the Court has found no such authority.   Moreover, it would seem to defeat the statutory scheme of reasonable resolution of problems facing persons with disabilities to allow requests for accommodations to be made for the first time after suit has been filed.   And, it would tend to foster litigation to follow  such  a  procedure.     More   importantly  for  today's case, the accommodations requested by the Plaintiff in the aftermath of his rejected applications and after he had

27

filed this action were not reasonable.   Principally, the Plaintiff requested that VCU upwardly adjust his grade point average and disregard his MCAT scores due to the fact that these objective criteria for admission were allegedly affected by his bipolar disorder and that VCU accept the Plaintiff's application for admission.   (See Am. Comp. at ¶¶ 92, 93, 95.)   It is clear that VCU is not required to practice such "knowing ignorance" under either the ADA or the Rehabilitation Act, as such a requirement would obviously constitute a "lowering" of academic standards. See Betts, 145 Fed. Appx. at 13 ("[W]e think that the University had two choices: ignore years of objective evidence . . . or rely on Betts' entire academic record, particularly his performance in the MAAP Postbacc program, and render its academic judgment.").   As in Betts, the Plaintiff's requested accommodations simply were not reasonable.   Thus, even if post-suit requests should be considered (and they should not), the requests made here were substantively unreasonable.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss (Docket No. 34) will be granted.

It is so ORDERED.

                                    /s/              REP
                              _____
                              Robert E. Payne
                              Senior United States District Judge


Richmond, Virginia
Date: October 16, 2009
            REP